UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **LJUBICA CAMPBELL** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:18-CV-3** |
| | § | **JURY TRIAL DEMANDED** |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE** | § | |
| **DEFENDANT.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Ljubica Campbell, (hereafter identified as "Campbell" or "Plaintiff"), files this Original Complaint, complaining of the Texas Department of Criminal Justice ("TDCJ"), and for her cause of action, respectfully shows the following:

### I. INTRODUCTION

1. This action seeks equitable relief, actual damages, compensatory damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post judgment interest for the gender discrimination suffered by Plaintiff in the course of her employment with the Defendant. Plaintiff was a correctional office V for Defendant at their Hospital Facility in Galveston located at or near 809 Harborside, Galveston, Texas 77550, until she was wrongfully terminated in retaliation for having brought a EEOC complaints with regard to ongoing discrimination she received in violation of Title VII for her gender, nationality, and/or race.

2. Plaintiff's cause of action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

3. Plaintiff demands a jury on all issues triable to a jury.

## II. PARTIES

4. Plaintiff, Ljubica Campbell, is a resident of Galveston County, Texas.

5. Defendant Texas Department of Criminal Justice may be served with process through the Texas Secretary of State, Citations Unit, James E. Rudder Building, 1019 Brazos, Room 220, Austin, Texas 78701.

6. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 since Plaintiff is bringing this claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. The Court has personal jurisdiction over Defendant since it maintains sufficient minimum contacts with the State of Texas.

8. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b) since the events or omissions giving rise to this cause of action occurred in the Southern District of Texas.

9. This Court has jurisdiction over all claims in this action.

## IV. PROCEDURAL REQUISITES

10. Plaintiff filed a charge for retaliation in violation of Title VII against Defendant under Charge Number 460-2015-01076 on January 14, 2015 with the Equal Employment Opportunity Commission ("EEOC").

11. This lawsuit has been filed within (90) days of Plaintiff's receipt of the Notice of Right to Sue letter. Please See Exhibit A.

12. All conditions precedent to filing this cause of action have been met.

## V. FACTS

13. Plaintiff is a Caucasian female of European descent from Macedonia who began her employment with the Texas Department of Criminal Justice on or about October 9, 2006.

14. During her employment, Plaintiff performed her job at an exemplary level and was ultimately promoted to correction officer level V. She was qualified for her position.

15. During her employment, Defendant began to discriminate against Plaintiff based on her gender (female), race (Caucasian), and/or national origin (European). Plaintiff complained about the unequal and disparate treatment she was receiving. Due to her accent from her national origin, and/or race she would be laughed at and called derogatory terms, such as Nazi. She was constantly made fun of for the way she talked by co-workers and supervisors. She was assaulted by another co-worker, an African American, and when she complained about it nothing happened to the African American individual. Meanwhile, she would get written up for the assault from the African American co-worker several months later, even though she had to call 911 against that this officer and an independent witness complained against the African American officer for her attack on Plaintiff. She was sexually harassed by another co-worker and told by her supervisor that "maybe he likes you, you need to have a few drinks with him and that's what you get being good looking," instead of disciplining the male officer. Male officers would not have to put up would such treatment. Plaintiff would not receive the same treatment as to job assignments or discipline. Other officers would get away with sleeping on the job and other infractions, without being disciplined, yet Plaintiff was under heavy scrutiny for not even committing such infractions or infractions that

raised to that level. Female officers who would be flirtatious and/or sleeping with the supervisor's would get to switch up their duty shifts/posts or get lighter duty/posts, which Plaintiff would then have to work the harder shift/post. Male officers were not subjected to this treatment. Plaintiff filed complaints against her supervisors and co-workers (who were black African Americans and younger than Plaintiff) for the unfair, discriminatory acts, and hostile work environment only to see no action taken against these individuals. Instead, Plaintiff the foreigner white female from European decent (Macedonia), who was labeled a Nazi, and was suspended in violation of TDCJ's own procedures and/or policies. Plaintiff also felt that she suffered adversely, as she was forced onto harder duty posts and subject to stricter treatment than her co-workers due to her gender, race and/or national origin.

16. Plaintiff finally brought a complaint to the EEOC regarding this in harassment in or around 2013 and a charged was filed. Plaintiff was not being subjected to equal treatment under TDCJ policies due to being in one or all of these protected groups. Her supervisors were not following said policies when dealing with her. Defendant would not communicate regarding her job duties, responsibilities, or work assignments. She did not receive the same job assignments. She was not allowed to switch around her duties. She received an unauthorized workplace suspension. Plaintiff was threatened by another male officer, but instead of him being written up, she was summarily suspended, and walked off the Defendant's property. Signs were put up stating that she was not allowed back into the facility. These actions violated TDCJ procedures. Plaintiff could not be summarily suspended, walked off the property, and signs should not be placed up. Based on her gender, race, and/or national origin Plaintiff was not being treated the same as other employees. Prior to even the first action of suspension, written approval has to be obtained from a division director, it was not.

17. Shortly after Defendant received notice of Plaintiff's execution of her protected right, filing the first EEOC claim, Defendant began to also harass and discriminate against Plaintiff in retaliation for her filing the complaint with the EEOC.

18. Plaintiff began to receive false write ups and/or disciplinary actions. She would be disciplined differently from the other employees of Defendant.  As early as February 2014, she was written up for not being properly relieved. This write up was then thrown out after investigation. The supervisor who had retaliated against Defendant with the false write up then refused further communication with Plaintiff even when it was necessary for Plaintiff to perform her job.

19. Plaintiff would then have her duty assignments changed up and would not get the more favorable assignments. Plaintiff was not allowed to switch duties when others were. Plaintiff's supervisor was verbally abrupt with her and would refuse to communicate to resolve matters. Plaintiff was treated differently from the other officers. Her supervisor would yell at her and physically poke her, which was not done to the other officers. The officers of African American descent would not receive such treatment. The male officers would not receive such treatment either. As a female officer and as a white officer of European descent, Plaintiff received such treatment. Plaintiff complained about this, but no action was taken, and she was left to continue to suffer from the harassing treatment.

20. In 2014, Plaintiff was called a "white bitch" by an African American guard. She filed a complaint against the guard with the TDCJ. A couple of months later she was physically assaulted by said same African American officer who called her a white bitch in an elevator at work because she white and European (Macedonian). A complaint was filed but no action was taken. The harassment got so bad that Plaintiff broke down crying at work. Defendant kept on bringing false

disciplinary actions against Plaintiff and spreading false rumors/statements about her at the work place.

21. With these false disciplinary actions, Defendant, would fail to follow their own procedures and policies denying the Plaintiff the opportunity to properly defend herself that other employees had. There were cases where Defendant would not even be provided with the documentation for what was being charged with.

22. Plaintiff would be given contradictory orders to try to set her up for a disciplinary action and/or not given the orders she needed to do her job. Plaintiff would also be treated differently in terms of the disciplinary action, while others would not be punished for the made up infraction, Defendant would attempt to and/or would punish Plaintiff. Defendant observed other employees actually be insubordinate, leave meetings, lose keys, and create disturbances and not receive a single word from a supervisor. In some cases, they were encouraged. A employee had used the word "bitch" to refer to a female supervisor in front of Defendant and the female supervisor and he was not written up or disciplined. An African American employee disrupted a morning shift meeting and then left in direct violation of TDCJ policy and she was actually encouraged by Defendants. Defendant if trying to communicate with her supervisor would be jumped on. Jumped on meaning spoken to in a hostile manner, with potential yelling, degrading the Plaintiff, poking the Plaintiff. Nothing was even said to this male officer. If Defendant tried to simply ask for duties or clarification of orders, without using such inflammatory language, she was jumped on. Defendant, however, would be written up and false accusations would be created. These false write ups and disciplinary actions continued through 2016 when Plaintiff was terminated. Plaintiff was literally told by Defendant that they were upset with her for filing an EEOC complaint. Plaintiff's EEOC complaints were brought up by Defendant as the causal link when Plaintiff was meeting

with them to discuss the false disciplinary actions being brought against her. Defendant would continue to treat Plaintiff differently as to resolution of these disciplinary actions as well. Defendant would be written for eating a piece of a colleague's pizza, even though they had previously exchanged food before, and the colleague did not know and/or want a complaint brought against Defendant for that reason. Continued unsubstantiated complaints were brought against the Plaintiff. Even so the Defendant simply allowed the unsubstantiated disciplinary actions to continue in retaliation against Defendant and would further keep Plaintiff under the same supervisors who were the cause of what Defendant knew to be the unsubstantiated disciplinary actions.

23. Defendant would bring a disciplinary action against Plaintiff, even when it involved another employee and fail to discipline the other employee or would not discipline the other employee as harshly as it disciplined the Plaintiff.

24. Plaintiff was in a constant state of having to fight for her job because of the retaliatory acts of Defendant, up and until the date she was wrongfully terminated. Even then Defendant treated Plaintiff differently. Instead being able to present her argument at mediation regarding the termination. Plaintiff was told to simply sign a sheet of paper explaining that she was to some degree resigning.

25. The disciplinary actions made against Plaintiff were false and/or Plaintiff was subjected to a harsher punishment than her co-workers. Plaintiff brought another complaint under charge 460-2015-01076 on or about January 14, 2015 detailing these retaliatory acts she had faced. The false disciplinary actions and unequal treatment continued beyond this date, with further ferver due to the new filing with the EEOC. The discriminatory and retaliatory treatment was ongoing from 2014 through 2016. Plaintiff filed an amendment to her charge with the EEOC following her

termination. Plaintiff brought complaints of this treatment to Warden Bosco, Human Resources respresentative Mary Gabbaid, Assistant Warden Bargess, and other supervisors in her chain of command with Defendant, only to continue to receive said treatment and see said adverse/retaliatory treatment increased up and until the point of her termination.

26.     Toward the end even Warden Bosco participated in the retaliatory treatment with biased and/or false disciplinary actions. Warden Bosco even made comments about Plaintiff's European background (Macedonian) that were offensive to Plaintiff while in his office. Plaintiff was brought on false claims of starting a disturbance and losing keys, among other complaints. The male officer that was with her when the key was allegedly loss, was not written up, and was basically told that he would be ok. The male officer that was with her when the disturbance allegedly occurred did not receive the same level of punishment as Plaintiff, if any. Plaintiff was not treated the same with regard to punishments for these disciplinary actions. She was denied access and/or denied similar access as her fellow employees to the TDCJ system to challenge these retaliatory actions. In some cases she would not see the evidence against her, she was told that evidence existed that did not, she would not see the documents against her, or be allowed to attend the hearing. All of which did not follow TDCJ policy. She was not disciplined according to the terms of TDCJ's own policy, receiving more extreme punishment than she should have. The very number of disciplinary actions brought against her was disproportionate to anything she had faced prior to executing her protected rights and/or that her co-workers had faced. Plaintiff was also wrongfully suspended from employment as well.

27.     On March 08, 2015 Defendant wrote Plaintiff up for sleeping and gave her six months discipline. Defendant's Warden claimed to have a picture of this incident. However, when the alleged incident occurred the Warden and Plaintiff had actually exchanged greetings, as she was

wide awake. The Warden was not allowed to have a camera in the section where he alleges the incident occurred.  The picture that served as the basis of this false disciplinary action was never produced and the Plaintiff was later told that by Defendant that it never existed.  On or about October 11, 2015, Defendant wrote Plaintiff up about misplaced key that Plaintiff did not misplace. Defendant then gave Defendant a disciplinary of 4 months, even though when the reports were on the matter were done, it was found that the timing of the alleged losing of the key, the timing of when it was found, plus it's location did not fit into the allegation that Plaintiff would have lost the key. Other employees not in plaintiff's protected groups and/or not being retaliated against had actually lost keys for longer periods of time without being disciplined.  On November 10, 2015, Defendant wrote Plaintiff up for allegedly eating a some of another co-workers lunch, even though the co-worker did not really make complaint about same, nor did he want to make a complaint about same. This led to Defendant giving Plaintiff a 6 months disciplinary. Plaintiff has never heard of any similar type of event.  On March 7, 2016, Defendant  wrote Plaintiff up for a verbal altercation that did not occur and/or did not occur in the a manner in which Defendant alleged. There was no evidence of incendiary language, yelling, or physical altercation. Defendant imposed another disciplinary on Plaintiff and used to this and the other discriminatory and/or retaliatory disciplinary actions to wrongfully terminate Plaintiff. Defendant could not recall whether the other officer involved, a male, was even disciplined about this matter when they were questioned by TWC regarding same. These disciplinary actions did not follow Defendant's own set policies and/or procedures. It was not that way other employees of defendant were treated with regard to the disciplinary procedures and policies of defendant. This led to Plaintiff being wrongfully terminated on June 12, 2016.

29. The allegations were fabricated against Plaintiff with the intent of terminating her. Plaintiff was even told by a former supervisor that Defendant was "going get her," when she told that person that she was afraid they were trying to get her in retaliation for her EEOC complaint. She further advised that she had to watch herself that some of the supervisors and couple of officers who are in a clique are going to burn me.

30. When Plaintiff raised these issues of retaliation and harassment that she was suffering with the Defendant, she would be ignored, laughed at, called the devil, and/or subjected to more of the same disparate treatment. Defendant's were trying to force Plaintiff's termination with continuing harassing treatment, and Plaintiff was techinically wrongfully terminated by Defendant in or about April of 2016 via suspension. Plaintiff was further denied her rights under TDCJ policy to challenge this termination in her June 2016 mediation, which led to her official wrongful termination. The behavior caused Plaintiff anguish and stress that took toll on her mentally and physically. She lost wages, had costs in attempting to locate a new position, and lost benefits.

## VII.  DISCRIMINATION UNDER TITLE VII AND RETALIATION

31. Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

32. Plaintiff is a female employee, and thus belongs to a group Title VII intended to protect.

33. Plaintiff is white and Caucasian, and thus belongs to a group Title VII intended to protect.

34. Plaintiff is of a European national origin (Macedonian), and thus belongs to a group Title VII intended to protect.

35. Defendant is an employer within the meaning of Title VII.  *See 42 U.S.C. §2000e(b).*

36.  As described above, Defendant subjected Plaintiff to different terms and conditions of employment because of her gender, race, and national origin in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., for which Plaintiff requests damages. Defendant intentionally discriminated against plaintiff because of her *race, color,* sex, and national *origin* in violation of Title VII as set forth above. {*See 42 U.S.C. §2000e-2.*} Plaintiff was treated less favorably than other similarly situated employees outside these protected groups.

37.     Plaintiff brought allegations of this disparate and discriminatory treatment to her supervisors and also filed with the EEOC in 2013. Plaintiff was then subjected to retaliatory treatment in as result thereof and brought a new complaint with the EEOC in 2015 detailing this new and ongoing retaliatory treatment she received as a result of her utilizing her protected rights. Following this new 2015 EEOC complaint, the retaliatory acts continued and got worse. More false disciplinary actions were filed against her and/or she was disparately punished for actions this continued until she was wrongfully terminated in April of 2016 and then denied access and/or equal treatment under the TDCJ procedures and policies to challenge said hearing.

38.     Other direct and/or circumstantial evidence demonstrates that Plaintiff discriminated against Plaintiff because of her gender, race, national origin, and sex under the Title VII. Other direct and/or circumstantial evidence demonstrates that Plaintiff was retaliated because of her using and/or executing her protected actions under the Title VII, and that Defendant intended to retaliate against Plaintiff because of her complaints in violation of Title VII.

39.     As a result of Defendant's actions, Plaintiff has suffered a loss of wages, both in the past and in the future, as well as emotional pain, mental anguish and a loss in benefits.

40.     As set forth above, Plaintiff participated in an activity protected by Title VII. The fifth circuit has previously found that, "'protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" Ackel v. Nat'l Communications, Inc.,

339 F.3d 376, 385 (5th Cir. 2003) (quoting Green v. Administrators of the Tulane Educational Fund, 284 F.3d 642, 657 (5th Cir. 2002)). This would include the complaints Plaintiff filed with the EEOC and the complaints she made internally to her supervisors with Defendant. As a result of Plaintiff executing her protected right, Defendant took an adverse employment actions against her including but not limited to the ongoing disparate treatment she complained of, discriminatory disciplinary actions, wrongful termination, and discriminatory treatment with regard to application of TDCJ policies. There exists a causal connection between the protected activity and the materially adverse action.

41. Further and/or in the alternative, Defendant used the discriminatory employment practices set forth above in violation of Title VII, and although these practices may appear to be neutral, they serve to discriminate against a disproportionate number of persons of plaintiff's *race, color, sex, and national origin*. *See 42 U.S.C. §2000e-2(k).*

## VIII.  DAMAGES

42. Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

43. As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

   a. Plaintiff was wrongfully disciplined by defendant and her reputation suffered harm from defendant's actions as well.

   b. Plaintiff was wrongfully suspended from employment with defendant.

   c. Plaintiff was wrongfully discharged by plaintiff and has diligently sought other employment, she has been unable to find a job at comparable pay and benefits.  In addition, plaintiff has incurred expenses in seeking other employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by defendant.

   d. Plaintiff suffered loss of her pension and/or retirement benefits.

    e.    Plaintiff suffered mental anguish and emotional distress in the form of stress, worry, depression, and physical illness which including but not limited to certain issues with her heart.

    f.    Plaintiff is entitled to a tax gross up for any additional taxes she would have to pay as a result of a lump sum payment.

## IX. ATTORNEY'S FEES

44. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

45. Plaintiff is entitled to recover attorney's fees and costs for bringing this action pursuant to 42 U.S.C. § 1988.

## X. JURY DEMAND

46. Plaintiff requests a trial by jury on all issues triable by a jury in this case.

## XI. RELIEF REQUESTED

47. Plaintiff requests the following relief:

    a. For actual damages for the period of time provided by law including appropriate backpay and reimbursement for lost pension, insurance, and all other benefits;

    b. For compensatory damages and punitive damages as allowed by law;

    c. For pre-judgment and post-judgment interest as allowed by law;

    d. For attorney's fees and costs of court;

    e. For a gross up to cover any negative tax consequences of a lump sum payment(s); and

    f. For such other and further relief to which Plaintiff may be justly    entitled.

Respectfully submitted,

By: /s/ Alexander M. Defreitas
    Alexander Defreitas
    State Bar No. 24042550
    Federal Bar No. 1636135
    Williams Tower
    2800 Post Oak Blvd., Suite 4100
    Houston, TX 77056
    Telephone: (832) 390-2388
    Telephone: (832) 794-6792
    Facsimile: (281) 784-3777
    a.defreitas@lawyer.com

LEAD ATTORNEY IN CHARGE FOR PLAINTIFF
LJUBICA CAMPBELL